1

2

3

4

5

6                    UNITED STATES DISTRICT COURT

7                   EASTERN DISTRICT OF CALIFORNIA

8

9   SUZANNE GARCIA and TAMMY        )    1:08-cv-1344 OWW DLB
    DENNISON,                       )
10                                  )    <u>CORRECTED</u> SCHEDULING
                    Plaintiffs,     )    CONFERENCE ORDER AND ORDER
11                                  )    AMENDING THE PLEADINGS TO
         v.                         )    ADD PARTY
12                                  )
    EXPOSÉ III, ANTHONY HWANG dba   )    Settlement Conference Date:
13  EXPOSÉ III; DONLON GABRIELSEN;  )    3/25/09 10:00 Ctrm. 9
    AGNES GABRIELSEN; and DOES 1-10,)
14  inclusive,                      )    Further Scheduling
                                    )    Conference:  4/<u>16</u>/09 8:15
15                  Defendants.     )    Ctrm. 3
                                    )
16  _____)

17

18  I.   Date of Scheduling Conference.

19       December 17, 2008.

20  II.  Appearances Of Counsel.

21       The Law Offices of Paul L. Rein by Paul L. Rein, Esq.,

22  appeared on behalf of Plaintiffs.

23       Long Williamson & Delis by Patrick A. Long, Esq., appeared

24  on behalf of Defendants Anthony Hwang dba Exposé III.

25       Stein & Lubin LLP by Eugene Chang, Esq., appeared on behalf

26  of Defendants Donlon Gabrielsen and Agnes Gabrielsen, as co-

27  trustees of the Gabrielsen Family Trust dated February 10, 1987,

28  amended and restated in its entirety on October 20, 1992 ("the

                                   1

1   Trust").

2   **III.   Summary of Pleadings.**

3        1.   Plaintiffs Suzanne Garcia and Tammy Dennison live near

4   and are intended patrons of the Exposé III store located at 169

5   W. Polk St., Coalinga, California (hereafter "the Store").   Both

6   Plaintiffs are qualified physically disabled persons, as defined

7   by all federal and California disability access laws, each

8   Plaintiff requires use of a motorized wheelchair for mobility,

9   and each possesses a proper disabled parking placard issued by

10  the State of California.

11       2.   On multiple occasions within the past two years prior

12  to the filing of this Complaint, Plaintiffs have each had

13  difficulties with entrance and usage of the Store owned and

14  operated by Defendants, and were denied full and equal access to

15  public accommodations and public facilities while attempting to

16  patronize the Store and/or travel on the walkway passing in front

17  of the Store.   Plaintiffs have often been deterred from driving

18  to the Store and to other stores that share a common parking area

19  because of the lack of properly configured, numbered and located

20  disabled parking spaces.   Plaintiffs' difficulties and denials of

21  access were due to architectural barriers and policy violations,

22  including but not limited to the following.

23       3.   During the month of February, 2007, Plaintiffs

24  attempted to enter the Store, but Store owner Defendant Anthony

25  Hwang came running to the entrance, ordered Plaintiffs to "Stop!"

26  and ordered them to stay out: "You can't come in here with those

27  chairs!"   He essentially chased Plaintiffs away.

28       4.   Later that day, having regained their composure,

                                  2

1  Plaintiffs again attempted to patronize the Store.   Although
2  Plaintiff Dennison was able to enter the Store with some
3  difficulty, Plaintiff Garcia decided to stay outside because she
4  feared she would not be able to fit her motorized wheelchair
5  through the doorway.   When Plaintiff Dennison entered the Store,
6  a metal security device and displays blocked her advance, so she
7  had to back her wheelchair out.

8      5.   Because Plaintiff Dennison is able to leave her
9  wheelchair and walk, with some difficulty and for short
10 distances, Plaintiff Garcia remained outside the Store while
11 Plaintiff Dennison walked into the Store.   Inside the Store she
12 observed that virtually all paths of travel within the Store,
13 including those between racks of clothing, were too narrow to
14 allow any kind of wheelchair to pass through, thereby denying
15 full and equal access.

16     6.   Even when deterred from entering the Store, Plaintiffs
17 also had difficulty passing by on the walkway at the front of the
18 Store on multiple occasions when they shopped in the area because
19 Defendants consistently placed clothing racks on the walkway
20 immediately in front of the Store which blocked the walkway.   On
21 several occasions, Plaintiffs complained to Defendants and their
22 employees, but Defendants continued to use portions of the
23 exterior walkway as a location for their clothing racks, blocking
24 access to wheelchair users.

25     7.   On March 25, 2008, Plaintiffs were traveling on the
26 public walkway outside the Store and attempted to pass between
27 two clothing racks.   One of the racks fell upon Plaintiff Suzanne
28 Garcia while she passed in her wheelchair.   While Plaintiff

3

Garcia was attempting to remove the rack from her person, a woman who was an owner or an employee of the Store pulled on the rack, injuring Plaintiff Garcia.  Plaintiff Garcia required emergency hospital treatment for a thumb sprain and fingernail wounds inflicted by the subject employee.  As a result of Defendants' denial of full and equal access, and of the specific requirement that disabled persons be provided "full and free use of . . . sidewalks [and] walkways" per Civil Code § 54, Plaintiffs suffered special, general and statutory damages.

8.   Based on preliminary investigations by Plaintiffs' representatives, the physical property owned and operated by Defendants was constructed and is maintained in an inaccessible condition for use by physically disabled persons with regard to a number of features that may adversely affect Plaintiffs as disabled wheelchair users.  Such features include the illegally narrow doorway, the metal security device inside the doorway which makes it even more difficult to enter in a wheelchair, the placement of clothing racks which does not leave sufficient room for a wheelchair to pass through, narrow aisles, excessively high counters, and the lack of a disabled accessible dressing room, all in violation of the law.  Further, the disabled parking facilities are illegally inadequate as to size, configuration and number of spaces, both as to those spaces serving the Store and those serving other portions of the shopping center that the Store is a part of.  All facilities and policies of Defendants must be brought into compliance with all applicable federal and state code requirements.

9.   The Store is a public accommodation.  The Americans

4

1   With Disabilities Act (ADA) states that "[no] individual shall be

2   discriminated against on the basis of disability in the full and

3   equal enjoyment of the goods, services, facilities, privileges,

4   advantages, or accommodations of any place of public

5   accommodation by any person who owns, leases, or leases to, or

6   operates a place of public accommodation."  42 U.S.C. § 12182.

7   Discrimination includes:

8   A failure to make reasonable modifications in policies,
    practices, or procedures when such modifications are
9   necessary to afford such goods, services, facilities,
    privileges, advantages, or accommodations to
10  individuals with disabilities. § 302(b)(2)(A)(ii).

11  A failure to take such steps as may be necessary to
    ensure that no individual with a disability is
12  excluded, denied service, segregated, or otherwise
    treated differently than other individuals because of
13  the absence of auxiliary aids and services.
    § 302(b)(A)(iii).

14

15  A failure to remove architectural barriers, and
    communication barriers that are structural in nature,
16  in existing facilities . . . where such removal is
    readily achievable. § 302(b)(2)(A)(iv).

17  Injunctive relief for these violations will include an order to

18  alter facilities to make such facilities readily accessible to

19  and usable by individuals with disabilities.

20      10.  Removal of the architectural barriers complained of is

21  also required under California law.  Any alterations, structural

22  repairs or additions since January 26, 1992, independently

23  triggers requirements for removal of barriers to access for

24  disabled persons per California Health & Safety Code §§ 19955,

25  19955.5 and 19959.  These provisions apply to the Exposé III

26  retail store.  Further, Title 24 of the California Code of

27  Regulations was in effect at the time of each alteration which

28  occurred at such public facility since July 1, 1982, thus

                                   5

1  requiring access complying with the specifications of Title 24

2  whenever each such alteration, structural repair or addition was

3  carried out.

4      11.   Each violation of the ADA also constitutes a separate

5  violation of California Civil Code §§ 54(c) and 54.1(d),

6  independently justifying an award of damages and injunctive

7  relief pursuant to California law, including remedies under Civil

8  Code §§ 54.3 and 55.   California Civil Code § 52(a) also provides

9  that each such violation entitles Plaintiff to damages,

10  specifically, "the actual damages, and any amount that may be

11  determined by a jury, or a court sitting without a jury, up to a

12  maximum of three times the amount of actual damage but in no case

13  less than four thousand dollars ($4,000), and any attorney fees

14  that may be determined by the court in addition thereto."

15      12.   Plaintiffs seek injunctive relief to remediate the

16  access barriers and establish policies which will prevent future

17  discrimination by Defendants, as well as damages and statutory

18  attorney fees and expenses.

19      <u>Summary of Exposé III, et al.</u>

20      1.   The Exposé Parties incorporate Exposé III and Anthony

21  Hwang's answer to Plaintiffs' Complaint and Anthony Hwang and

22  Myung Hwang's answer to the Gabrielsens' cross-claim.   The Exposé

23  Parties contest all of the facts and legal contentions set forth

24  in Plaintiffs' complaint and the Gabrielsens' cross-claim, except

25  as expressly admitted herein.   All other facts and legal

26  contentions are contested, including the following:

27      2.   The Exposé Parties deny that Plaintiffs have at any

28  time had difficulty with entrance and usage of the Exposé III

store, that Plaintiffs were denied full and equal access to any area inside or outside the Exposé III store, that Plaintiffs ever complained to the Exposé Parties, that a clothing rack fell on Plaintiff Garcia, that Plaintiffs suffered any damages, that Plaintiffs were injured in fact or in law, that Plaintiffs are entitled to injunctive relief, that any area inside or outside the Exposé III store is not in full compliance with all applicable federal and state code requirements as alleged in Plaintiffs' complaint.  In addition, Anthony Hwang and Myung Hwang deny, in connection with the Gabrielsens' cross-claim, that they owe indemnity to the Gabrielsens under any of the theories alleged in the cross-claim.  Further, Exposé III and Anthony Hwang assert 28 affirmative defenses in their answer to Plaintiffs' complaint, and Anthony Hwang and Myung Hwang assert 24 affirmative defenses to the Gabrielsens' cross-claim.

3.   The Exposé Parties assert in their cross-claim that the Gabrielsens, as owners and maintainers of the shopping center and as lessors of the Exposé III store premises, are obligated to indemnify them in connection with Plaintiffs' claims, and are obligated to reimburse the Exposé Parties for their attorneys' fees and costs, including any costs relating to required repairs and improvements of the Exposé III store facilities.

Summary of Gabrielsens

1.   Defendants Donlon Gabrielsen and Agnes Gabrielson, co-trustees of the Gabrielsen Family Trust dated February 10, 1987, amended and restated in its entirety on October 20, 1992 (the "Gabrielsens"), deny the allegations of the Complaint and deny that Plaintiffs are entitled to any relief whatsoever.  The

1   Gabrielsens further deny that Plaintiffs Suzanne Garcia and Tammy

2   Dennison (the "Plaintiffs") were denied access to the subject

3   premises.  Until the filing of the Complaint, Plaintiffs never

4   voiced any complaints about access issues to the Gabrielsens.

5       2.    The Gabrielsens are owners of the real property at 169

6   W. Polk Street, Coalinga, California (the "Property").  The

7   Gabrielsens leased a portion of the Property (the "Premises") to

8   Defendants and Cross-Defendants Anthony S. Hwang and Myung H.

9   Hwang (the "Hwangs") pursuant to a written Lease Agreement dated

10  August 15, 2002 (the "Lease").  The Gabrielsens do not own or

11  operate Exposé III, which is a store owned and operated by the

12  Hwangs.

13      3.    Pursuant to the Lease, among other things, the Hwangs

14  agreed to comply with all statutes, ordinances, and requirements

15  of all county, state and federal authorities pertaining to the

16  Premises.  The Gabrielsens filed a cross-claim for breach of

17  lease, indemnity, contribution, and declaratory relief against

18  the Hwangs.

19  IV.   Orders Re Amendments To Pleadings.

20      1.    It is ordered that the pleadings are amended to add as

21  a Defendant, the owner of the real property, Gabrielsen Family

22  Trust dated February 10, 1987, amended and restated in its

23  entirety on October 20, 1992, and Donlon Gabrielson and Agnes

24  Gabrielsen, as co-trustees of that Trust.

25  V.    Factual Summary.

26      A.    Admitted Facts Which Are Deemed Proven Without Further

27  Proceedings.

28          1.    Suzanne Garcia and Tammy Dennison, Plaintiffs in

8

1  this action, allege that they are disabled within the meaning of

2  the Americans With Disabilities Act.  That issue will be resolved

3  by discovery.

4      2.   The Gabrielsen Defendants are the owners of the

5  real property located at 169 West Polk Street, Coalinga,

6  California.

7      3.   The business known as Exposé III is located at

8  that address.

9      4.   The parking lot that is also in dispute in this

10  lawsuit is also located at 169 West Polk Street, Coalinga,

11  California.

12      B.   Contested Facts.

13      1.   What construction or "alterations, structural

14  repairs or additions," have the subject facilities undergone

15  since July 1, 1970 (Health & Safety Code §§ 19955 and 19959);

16  since January 1, 1982 (Cal. Code Regulations, Title 24); and

17  since January 26, 1992 (Title III of the Americans With

18  Disabilities Act).

19      2.   Were the subject facilities, goods, and services

20  cited in Plaintiffs' complaint, and other relevant facilities

21  serving the subject facility, accessible to Plaintiffs and other

22  disabled wheelchair users during the months of February 2007, and

23  March, 2008, when Plaintiffs visited the premises.

24      3.   What would be the individual cost, per ADA

25  statutory and regulatory standards, for removal of each barrier

26  to access at the facilities remaining after the enactment of the

27  ADA on July 26, 1990, and after ADA compliance deadline of

28  January 26, 1992?

1        **4.**   If Defendants allege that barrier removal is "not

2   readily achievable," what are the "overall financial resources"

3   of each Defendant (and of any "related entities," including all

4   holding and parent companies, subsidiaries, affiliates, trusts,

5   joint ventures, and general partners) for purposes of determining

6   whether each individual barrier removal is "readily achievable"

7   under the standards of §301(9) of the Americans With Disabilities

8   Act of 1990 and associated ADA regulations?  <u>See</u> <u>Guzman v.</u>

9   <u>Denny's Inc.</u>, 40 F.Supp.2d 930 (U.S.D.C. S.D. Ohio 1999); <u>Botosan</u>

10  <u>v. McNally Realty</u>, 216 F.3d 827 (9th Cir. 2000).

11       **5.**   What damages, if any, did Plaintiffs incur as a

12  result of lack of access, under California state law standards,

13  including California Civil Code §§ 52 and 54.3, from the date of

14  their respective visits to the subject premises until whatever

15  date that full and equal access to the subject facilities is

16  finally provided?

17       **6.**   Was there a lack of proper van accessible parking

18  and a lack of accessible exterior paths of travel from the

19  designated disabled parking place to the business, at the time of

20  Plaintiffs' visits?

21       **7.**   Were the accommodations complained of in

22  compliance with ADA standards at the time of Plaintiff's visits,

23  and as of the present.

24       **8.**   What were the circumstances of Plaintiffs'

25  exclusions and physical injuries.

26       **9.**   The Exposé Parties incorporate the Store and

27  Anthony Hwang's answer to Plaintiffs' complaint and Anthony Hwang

28  and Myung Hwang's answer to the Gabrielsens' cross-claim.  Store

**10**

1  contests all of the facts set forth in Plaintiffs' complaint,

2  except as expressly admitted herein.  All other facts are

3  contested including the following.

4      10.  That Plaintiffs have ever had difficulties with

5  entrance and usage of the Store and the walkway in front of the

6  Store.

7      11.  That Plaintiffs were ever denied entrance to the

8  Store.

9      12.  That the metal security device and displays ever

10  blocked Plaintiffs from coming into the store in their

11  wheelchairs.

12      13.  That the paths of travel within the Store are too

13  narrow to allow a wheelchair to pass through.

14      14.  That a clothing rack on the walkway outside the

15  Store fell upon Plaintiff Garcia at any time.

16      15.  That Plaintiff Garcia was physically injured by a

17  clothing rack.

18      16.  That Plaintiff Garcia was required to obtain

19  medical attention and incur medical expenses.

20      17.  That Plaintiffs ever suffered physical, mental, or

21  emotional injury as a result of anything related to the Store or

22  Hwang parties.

23      18.  That the counters in the Store are excessively

24  high.

25      19.  That there is no disabled accessible dressing

26  room.

27      20.  That Plaintiffs ever complained to the Store or

28  their employees regarding the use of the exterior walkway to

1  place clothing racks on.

2      21.   That the Store bathroom is available for public
3  use.

4      22.   The Gabrielsens incorporate their Answer to
5  Complaint filed in this action and dispute the allegations raised
6  by Plaintiffs in their Complaint.

7      23.   Whether the Premises were inaccessible to
8  Plaintiffs or other disabled persons as alleged in the Complaint.

9      24.   Whether the disabled parking facilities were
10  improperly configured, numbered, and located so that Plaintiffs
11  were deterred from driving to the Store or otherwise denied
12  access to the Premises.

13      25.   Whether removal of any alleged barriers is readily
14  achievable.

15      26.   Whether Plaintiffs incurred any damages.

16      27.   The Gabrielsens do not own or operate the Store.

17      28.   Whether the modifications sought by Plaintiffs
18  would be a fundamental alteration.

19      29.   Whether the modifications sought by Plaintiffs
20  would be an undue burden.

21      30.   Whether there were barriers which denied access to
22  Plaintiffs.

23      31.   Whether the Gabrielsens are required to modify any
24  portion of the Premises or remove any barriers.

25      32.   Whether the premises were in compliance with state
26  and federal law when built.

27      33.   Whether the Premises have undergone any
28  construction, alteration, structural repairs or additions after

1  being built.

2      34.  What is the current condition of the Premises.

3      35.  Whether the Gabrielsens violated any state or

4  federal laws governing discrimination against disabled persons.

5      36.  Whether Plaintiffs are entitled to the relief

6  requested in the Complaint.

7      37.  Whether the Hwangs breached the Lease.

8      38.  Whether the Hwangs have a duty to defend and

9  indemnify the Gabrielsens.

10     39.  Whether the Hwangs violated any federal or state

11 laws governing discrimination against Plaintiffs.

12     40.  The Gabrielsens reserve their right to dispute

13 other legal and factual contentions as such matters are revealed

14 by means of discovery.

15 VI.  Legal Issues.

16     A.  Uncontested.

17     1.  Jurisdiction exists under 28 U.S.C. § 1331 and the

18 Americans With Disabilities Act.  Supplemental claims are also

19 asserted under California law for violation of California

20 Government Code §§ 4450 et seq.; Health & Safety Code § 19955, et

21 seq.; Title 24 California Code of Regulations; and California

22 Civil Code §§ 51, 52, 54, 54.1 and 55.

23     2.  Venue is proper under 28 U.S.C. § 1391(b).

24     3.  To the extent supplemental claims are asserted,

25 the parties agree that the substantive law of the State of

26 California provides the rule of decision.

27     B.  Contested.

28     1.  What access changes and reasonable modifications

13

in policy are required under the ADA and the corresponding regulations entitled Americans With Disabilities Act Access Guidelines (ADAAG)?

2.   What access changes and monetary damages are required for a finding of violation of Civil Code §§ 51 and 54.1?

3.   What damages are required under California law for a finding of access violations under ADA standards, as incorporated by reference into Civil Code §§ 52, 54(c) and 54.1(d)?

4.   Must any deviations from Title 24's access requirements be formally approved through a written "unreasonable hardship" exception and provide useable and accessible "equivalent facilitation?"  (<u>Donald v. Café Royale</u>, 218 Cal.App.3d 168 (1990); <u>City and County San Francisco v. Grant Co.</u>, 181 Cal.App.3d 1085 (1986); <u>People v. Ex Rel Deukmejian v. CHE, (Charthouse)</u>, 150 Cal.App.3d 123 (1983).)

5.   Do local building departments have authority to enforce the ADA, or waive any requirements under the ADA, or is enforcement authority vested only in the U.S. Department of Justice and through private lawsuits?

6.   Whether Plaintiffs attempted to mitigate their damages.

7.   Whether Plaintiffs are individuals with a "disability" within the meaning of the statutes under which the claims in the complaint are brought.

8.   Whether the accommodations referenced in the complaint are in violation of the law.

9.   Whether the removal of architectural barriers

14

1 alleged by Plaintiffs is readily achievable.

2          10.   Whether provision of alternative methods for
3 removal of architectural barriers is readily achievable.

4          11.   Whether the Exposé Parties failed to act in a
5 manner which was proper, reasonable, lawful, and in the exercise
6 of good faith.

7          12.   Whether providing the accommodations which
8 Plaintiffs requested, if any, would have caused the Exposé
9 Parties to suffer undue hardship within the meaning of the
10 statutes under which the claims in the complaint are brought.

11          13.   Whether Plaintiffs have standing under the
12 statutes under which the claims in the complaint are brought.

13          14.   Whether Plaintiffs have waived their rights under
14 the statutes under which the claims in the complaint are brought.

15          15.   Whether violations of law asserted in Plaintiffs'
16 complaint are the result of design defects.

17          16.   Whether Plaintiffs are estopped from asserting the
18 claims set forth in the complaint.

19          17.   Whether Plaintiffs' damages alleged in their
20 complaint were caused by the acts or omissions of the Exposé
21 Parties or others.

22          18.   Whether Plaintiffs have acted in bad faith.

23          19.   Whether Plaintiffs' remedies at law for the
24 damages alleged in their complaint are adequate.

25          20.   Whether any of the causes of action in the
26 complaint are barred by the doctrine of unclean hands.

27          21.   Whether indemnity is owed to the Exposé Parties.

28          22.   Whether the complaint states facts sufficient to

1   constitute a valid claim for relief against the Exposé Parties

2   (including, without limitation, Plaintiffs' claims for injunctive

3   relief, treble damages, general, compensatory, special,

4   consequential or statutory damages, and attorneys' fees).

5          23.   Whether the damages alleged in the complaint, if

6   any, were caused in whole or in part by Plaintiffs' negligence or

7   other fault.

8          24.   Whether the damages alleged in the complaint, if

9   any, were caused in whole or in part by the acts and omissions of

10  third parties.

11         25.   Whether Plaintiffs' claims are barred by the

12  applicable statute of limitations.

13         26.   Whether Plaintiffs' claims are barred by the

14  doctrine of laches.

15         27.   Whether the accommodation Plaintiffs seek in their

16  complaint would be an unreasonable hardship and unduly

17  burdensome.

18         28.   Whether the issuing of an injunction ordering an

19  abatement of the alleged conditions would impose a hardship on

20  the Exposé Parties greatly proportionate to that imposed on

21  Plaintiffs and/or the public by the continuances of the alleged

22  conditions.

23         29.   Whether the modifications which Plaintiffs' seek

24  would fundamentally alter the nature of the services, facilities,

25  or accommodations of the Exposé Parties' business.

26         30.   Whether there has been remodeling of, new

27  construction to, or alteration to any area of the subject

28  facility complained of by Plaintiffs during the relevant time

1  period.

2      31.   Whether the modification/alteration sought is
3  structurally impracticable.

4      32.   Whether the Exposé Parties owe indemnity to the
5  Gabrielsens.

6      33.   The Gabrielsens incorporate their Answer to
7  Complaint and state that all legal issues are contested, which
8  include, among other things:

9      34.   Whether the Premises were inaccessible to
10 Plaintiffs or other disabled persons as alleged in the Complaint.

11     35.   Whether the disabled parking facilities were
12 improperly configured, numbered, and located so that Plaintiffs
13 were deterred from driving to Exposé III or otherwise denied
14 access to the Premises.

15     36.   Whether removal of any alleged barriers is
16 readily achievable.

17     37.   Whether Plaintiffs incurred any damages.

18     38.   The Gabrielsens do not own or operate Exposé III.

19     39.   Whether the modifications sought by Plaintiffs
20 would be a fundamental alteration.

21     40.   Whether the modifications sought by Plaintiffs
22 would be an undue burden.

23     41.   Whether there were barriers which denied access to
24 Plaintiffs.

25     42.   Whether the Gabrielsens are required to modify any
26 portion of the Premises or remove any barriers.

27     43.   Whether the Premises were in compliance with state
28 and federal law when built.

1      44.   Whether the Premises has undergone any
2  construction, alteration, structural repairs or additions after
3  being built.

4      45.   What is the current condition of the Premises.

5      46.   Whether the Gabrielsens violated any state or
6  federal laws governing discrimination against disabled persons.

7      47.   Whether Plaintiffs are entitled to the relief
8  requested in the Complaint.

9      48.   Whether the Hwangs breached the Lease.

10     49.   Whether the Hwangs have a duty to defend and
11  indemnify the Gabrielsens.

12     50.   Whether the Hwangs violated any federal or state
13  laws governing discrimination against Plaintiffs.

14     51.   The Gabrielsens reserve their right to dispute
15  other legal and factual contentions as such matters are revealed
16  by means of discovery.

17  VII. Consent to Magistrate Judge Jurisdiction.

18     1.   The parties have not consented to transfer the
19  case to the Magistrate Judge for all purposes, including trial.

20  VIII.     Corporate Identification Statement.

21     1.   Any nongovernmental corporate party to any action in
22  this court shall file a statement identifying all its parent
23  corporations and listing any entity that owns 10% or more of the
24  party's equity securities.  A party shall file the statement with
25  its initial pleading filed in this court and shall supplement the
26  statement within a reasonable time of any change in the
27  information.

28  ///

**IX.   Discovery Plan and Cut-Off Date.**

1.   The parties shall make their initial disclosures on January 30, 2009.

**X.   Settlement Conference.**

1.   To avoid unnecessary inconvenience, burden and expense of litigation, the parties have agreed to a joint, cooperative site inspection by Plaintiffs' attorney and expert access consultant for the afternoon of December 17, 2008.

2.   Further, the parties propose that an early Settlement Conference in this case be held.  Accordingly, a Settlement Conference is scheduled for March 25, 2009, at 10:00 a.m. in Courtroom 9 before the Honorable Dennis L. Beck, United States Magistrate Judge.

3.   Unless otherwise permitted in advance by the Court, the attorneys who will try the case shall appear at the Settlement Conference with the parties and the person or persons having full authority to negotiate and settle the case on any terms at the conference.

4.   Permission for a party [not attorney] to attend by telephone may be granted upon request, by letter, with a copy to the other parties, if the party [not attorney] lives and works outside the Eastern District of California, and attendance in person would constitute a hardship.  If telephone attendance is allowed, the party must be immediately available throughout the conference until excused regardless of time zone differences. Any other special arrangements desired in cases where settlement authority rests with a governing body, shall also be proposed in advance by letter copied to all other parties.

1        5.   Confidential Settlement Conference Statement.

2   At least five (5) days prior to the Settlement Conference the

3   parties shall submit, directly to the Magistrate Judge's

4   chambers, a confidential settlement conference statement.  The

5   statement should not be filed with the Clerk of the Court nor

6   served on any other party.  Each statement shall be clearly

7   marked "confidential" with the date and time of the Settlement

8   Conference indicated prominently thereon.  Counsel are urged to

9   request the return of their statements if settlement is not

10  achieved and if such a request is not made the Court will dispose

11  of the statement.

12       6.   The Confidential Settlement Conference

13  Statement shall include the following:

14            a.   A brief statement of the facts of the

15  case.

16            b.   A brief statement of the claims and

17  defenses, i.e., statutory or other grounds upon which the claims

18  are founded; a forthright evaluation of the parties' likelihood

19  of prevailing on the claims and defenses; and a description of

20  the major issues in dispute.

21            c.   A summary of the proceedings to date.

22            d.   An estimate of the cost and time to be

23  expended for further discovery, pre-trial and trial.

24            e.   The relief sought.

25            f.   The parties' position on settlement,

26  including present demands and offers and a history of past

27  settlement discussions, offers and demands.

28       7.   Dependent upon the outcome of the Settlement

20

Conference, a further Scheduling Conference will be held on April 16, 2009, at 8:15 a.m.  The parties may appear telephonically at that time.

IT IS SO ORDERED.

Dated:   **December 23, 2008**                /s/ Oliver W. Wanger
                                              UNITED STATES DISTRICT JUDGE